**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

DEC 28 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OSCAR JESUS SALAIS, | No. 20-55890 |
| Petitioner-Appellant, | D.C. No. 2:16-cv-03396-GW-JC |
| v. | |
| C. PFEIFFER, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted November 18, 2022
Pasadena, California

Before: WARDLAW and W. FLETCHER, Circuit Judges, and KENNELLY,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

Oscar Jesus Salais (Salais) appeals from the district court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus challenging his state conviction for three counts of attempted first degree murder. While trying to rob three men, Salais threatened two of the men with a short-barreled shotgun and fired at all three men as the group ran away. Following his conviction by a jury, the California Court of Appeal affirmed the judgment in a reasoned decision, and the California Supreme Court summarily denied review. The district court denied Salais's federal habeas petition, and this timely appeal followed.

Our *de novo* review of the district court's denial of a habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). *Sanders v. Cullen*, 873 F.3d 778, 793 (9th Cir. 2017). Under AEDPA, we must defer to the last state court's reasoned decision on any claim that was adjudicated on the merits unless that decision is: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

1. The state Court of Appeal reasonably concluded that there was sufficient evidence to support Salais's conviction for all three counts of attempted

2

murder. When the sufficiency of the evidence is challenged, we assess "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime [as dictated by state law] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under California law, the evidence supports a conviction for attempted murder if there is proof of "[1] the specific intent to kill and [2] the commission of a direct but ineffectual act toward accomplishing the intended killing." *People v. Houston*, 54 Cal. 4th 1186, 1217 (2012).

Based on Salais's acts and the circumstances of the crime, a rational trier of fact could have concluded Salais had the requisite intent to kill all three of the victims. *See People v. Smith*, 37 Cal. 4th 733, 741 (2005). "[A] shooter may be convicted of multiple counts of attempted murder . . . where the evidence establishes that the shooter used lethal force designed and intended to kill everyone in an area around the targeted victim (i.e., the 'kill zone') as the means of accomplishing the killing of that victim." *Id.* at 745–46; *see also People v. Bland*, 28 Cal. 4th 313, 330–31, 331 n.6 (2002). Here, all three victims testified that, after Salais had trouble firing his shotgun, they heard a shot fired toward them as they ran down the street to escape from him. Two victims saw Salais standing in the street when the shot went off and testified that he was standing between thirty-three and seventy-five feet away. Because a specific intent to kill under the kill

3

zone theory can be established even if the shooter fires the gun only once, *see Houston*, 54 Cal. 4th at 1218, and can be reasonably inferred from circumstantial evidence, *see People v. Canizales*, 7 Cal. 5th 591, 608 (2019), these facts could have led a rational trier of fact to conclude Salais intended to kill all three victims.[1]

Salais argues that even if he was shown to have fired the short-barreled shotgun while the three men were running, there was no evidence that all the victims were within the "zone of danger." To be sure, the prosecution's ballistics expert testified on cross-examination that the birdshot ammunition when fired from close range—for example, three feet away—would be fatal to a victim, whereas birdshot fired from 100 feet away would cause minimal injury. But, assuming the jury credited witness testimony that Salais shot at the victims from approximately thirty feet away, and that the three victims were running close together, a jury could have reasonably determined "that [Salais] used lethal force designed and intended to kill everyone in an area around the targeted victim." *Smith*, 37 Cal. 4th at 745–46.[2]

---

[1] Salais filed an unopposed motion to take judicial notice of two trial exhibits: (1) photographs of the short-barreled shotgun introduced as People's Exhibit 3 and (2) an aerial photograph introduced as People's Exhibit 4. Because courts can take judicial notice of state court trial records, *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012), we grant Salais's motion.

[2] Because the kill zone theory independently supports all three convictions, we do not address whether the two victims' testimony regarding Salais threatening them with the shotgun was "inherently improbable."

2.     The Court of Appeal also reasonably concluded that the prosecutor did not violate *Brady v. Maryland*, 373 U.S. 83 (1963), when he failed to disclose a key witness's arrest report.  To succeed on a *Brady* claim, Salais must show that the evidence was "(1) favorable to the accused; (2) suppressed by the prosecution; and (3) prejudicial."  *Ochoa v. Davis*, 16 F.4th 1314, 1326 (9th Cir. 2021) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

On the last day of trial, the prosecutor disclosed that he received a phone call from law enforcement informing him that a key witness for the prosecution had been arrested the evening after he testified.  The prosecutor briefly described the events leading up to the arrest, but did not turn over the available arrest report, which would have revealed the witness's possible gang affiliation.  Although the prosecutor claimed to provide all the information he had at the time, "the prosecution is in a unique position to obtain information known to other agents of the government," and so "it may not be excused from disclosing what it does not know but could have learned."  *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (en banc).  Because a "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf . . . , including the police," and especially in light of the fact that it was the last day of trial, we conclude that the arrest report was suppressed for purposes of *Brady*.  *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

The state Court of Appeal nevertheless reasonably concluded that the evidence of the witness's gang membership was not necessarily favorable or prejudicial to Salais. Salais contends that the jury would have reached a different outcome had it known about the witness's gang affiliation because he could have impeached the witness's credibility. However, mere speculation that evidence of the witness's possible gang affiliation could have been used for impeachment is insufficient to state a *Brady* claim. *See Runningeagle v. Ryan*, 686 F.3d 758, 766–67, 769–70 (9th Cir. 2012).

Moreover, the "possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976). Significantly, Salais's convictions do not rest on the testimony of this single witness. Rather, his convictions are supported by ample evidence in the record, including two other witnesses' accounts and forensic evidence tying his short-barreled shotgun to a live round found at the scene. In sum, the Court of Appeal reasonably denied Salais's *Brady* claim. And to the extent that Salais contends that evidence of the witness's gang affiliation could have been used to show the incident began as mutual combat, the Court of Appeal reasonably determined that there was no evidence that the victims were the aggressors.

6

3. The Court of Appeal reasonably rejected Salais's ineffective assistance of counsel claim. Salais asserts that his defense counsel was ineffective because she failed to timely obtain the witness's arrest report. To establish ineffective assistance of counsel, Salais must prove: (1) that his defense counsel's performance was deficient, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Although defense counsel was arguably deficient by failing to seek a continuance before the trial ended so that she could obtain the arrest record herself, Salais cannot show that but for that failure, the result of his trial would have been different in light of the overwhelming evidence of his guilt. Just as the content of the arrest report is not material under *Brady*, the failure to obtain it is not prejudicial under *Strickland*. *See Gentry v. Sinclair*, 705 F.3d 884, 906 (2013).

**AFFIRMED.**